IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARY B. S., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 24-CV-444-JFJ |
| | ) |
| FRANK BISIGNANO,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Mary B. S. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court **REVERSES and REMANDS** the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.    General Legal Standards and Standard of Review**

"Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are

---

[1] Effective May 7, 2025, pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment "must be established by objective medical evidence," such as medical signs and laboratory findings, "from an acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion [is not sufficient] to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If a claimant satisfies his burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps

2

that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance "and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262. A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and the ALJ's Decision

Plaintiff, then a 44-year-old female, applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on January 20, 2022, alleging a disability onset date of December 28, 2021. R. 16, 207-19. Plaintiff claimed she was unable to work because she suffered from degenerative disc disease and had two slipped discs. R. 268. Plaintiff's claims for benefits were denied initially and on reconsideration. R. 105-06, 118-24. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a telephonic hearing on April 23, 2024. R. 32-62. The ALJ issued a decision on May 31, 2024, denying benefits and finding Plaintiff not disabled

because she could perform other work existing in the national economy. R. 16-25. The Appeals Council denied review, and Plaintiff appealed to this Court. R. 1-3; ECF No. 2.

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021. R. 18. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 28, 2021. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: history of closed right radial fracture; history of bilateral humerus fractures status post open reduction with internal fixation of right intraarticular distal humerus fracture; umbilical hernia; hiatal hernia; major depressive disorder (recurrent episode, mild); cannabis use disorder (mild); and amphetamine-type substance abuse disorder (mild). R. 19. The ALJ found that Plaintiff's medically determinable impairment of hepatitis C was non-severe. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 19-20. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had moderate limitations in (1) understanding, remembering, or applying information and (2) interacting with others, and mild limitations in (3) concentrating, persisting, or maintaining pace and (4) adapting or managing oneself. *Id.*

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform work as follows:

> [T]he claimant has the residual functional capacity to **lift and/or carry 20 pounds occasionally** and 10 pounds frequently; stand and/or walk 6 hours in an 8-hour day; and sit 6 hours in an 8-hour day. The claimant can **frequently reach and handle bilaterally**. She is precluded from climbing ladders, ropes and scaffolds. She can frequently stoop and crawl. She is precluded from working with exposure to heights and hazardous machinery with moving mechanical parts. The claimant can understand, remember, and carry out detailed but not complex instructions. She should have no more than occasional interaction with the public, co-workers and supervisors.

R. 20 (emphasis added). At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a fast-food service manager. R. 23. At step five, based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform other occupations existing in significant numbers in the national economy, such as Cleaner/Housekeeper, Marker, and Routing Clerk. R. 24. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). *Id.* Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. R. 25. Accordingly, the ALJ concluded that Plaintiff was not disabled.

### III.     Issues

Plaintiff raises two points of error in her challenge to the denial of benefits, which the Court re-organizes into three, consistent with the Commissioner's brief: (1) the ALJ's conclusion that Plaintiff was not as mentally limited as the Disability Determination Service physician found was unsupported and inconsistent; (2) the ALJ's physical RFC determination was not supported by substantial evidence; and (3) the ALJ improperly analyzed Plaintiff's subjective pain. ECF No. 13. The Court agrees with Plaintiff's second allegation of error—namely, that reversal is warranted because the RFC limitations regarding Plaintiff's ability to reach, handle, lift, and carry were not supported by substantial evidence. The Court does not consider Plaintiff's remaining arguments.

### IV.     Analysis – ALJ's Physical RFC Was Not Supported by Substantial Evidence

Plaintiff contends the ALJ's conclusion that Plaintiff can "frequently reach and handle bilaterally" and "occasionally lift and/or carry [twenty] pounds" was not supported by substantial evidence because the ALJ failed to account for objective medical records supporting additional limitations in her arms and left shoulder. ECF No. 13 at 9. Plaintiff argues that the ALJ ignored probative records of multiple shoulder, arm, and wrist injuries that demonstrate continual pain,

5

lack of full mobility, lifting restrictions, and persistent difficulty lifting her left arm. *Id.* at 10-12. Plaintiff asserts that, had the ALJ properly accounted for her shoulder and arm impairments by imposing additional limitations on reaching, handling, lifting, and carrying, the step-five jobs identified by the VE, which require occasional lifting and/or carrying at least twenty pounds and frequent reaching, would all be precluded. *Id.* at 14.

Plaintiff has an extensive history of injuries to her upper extremities. In February 2022, Plaintiff suffered a "transverse nondisplaced fracture of the distal radius" in her right wrist through a slip-and-fall accident. R. 618. Ten days later, Plaintiff fell and injured her left shoulder. R. 619. In September 2022, Plaintiff fell again and re-injured her right wrist. R. 832. In November 2023, Plaintiff was involved in a car accident that caused her to suffer a "left shoulder fracture dislocation" (R. 912), and, in her right arm, a "[s]everely comminuted, displaced distal humeral fracture, with intra-articular extension into the elbow joint." R. 1108. Plaintiff's left shoulder was repaired through surgery. R. 1121. To repair her right arm, Plaintiff underwent "a right open reduction internal fixation ('ORIF') of the right intra-articular distal humerus fracture with irrigation and debridement down to and including the bone for the open fracture and a triceps repair." R. 915.

In the RFC, the ALJ limited Plaintiff to lifting and/or carrying twenty pounds occasionally and reaching and handling bilaterally frequently. R. 20-23. In the decision, the ALJ discussed all three of Plaintiff's falls in 2022. R. 21-22. The ALJ noted that Plaintiff's two falls in February 2022 caused symptoms associated with "cervical radiculopathy, acute pain of the left shoulder, and a closed fracture of the distal end of the right radius," but the ALJ stated that Plaintiff's symptoms from those falls stabilized by October 2022. R. 22 (citing R. 625). The ALJ stated that Plaintiff's third fall in 2022 resulted in "the reinjury of her right wrist," which caused "tenderness to palpation

6

of the right distal medial ulna[] [and] a mild radial deviation of the right lower extremity." *Id.* (citing R. 832-35). However, the ALJ noted that, after the third fall, Plaintiff reported no pain in her right elbow and no noticeable shoulder pain. *Id.* (citing R. 832-35). The ALJ subsequently analyzed Plaintiff's 2023 left shoulder humerus fracture by stating that, in the weeks following the injury, Plaintiff "reported [that] her pain is controlled in her arms. Her pain in the elbow is improved." *Id.* (quoting R. 918, 920). At a February 8, 2024, appointment, Plaintiff "reported difficulty lifting her left arm during the recovery period." *Id.* (quoting R. 932). But the ALJ concluded that "there is no objective evidence that this functional limitation persists to date." *Id.*

In further support of the physical RFC, the ALJ explained that the lifting and/or carrying limit was based on "the combined effect of a lumbar and cervical radiculopathy," and the reaching and handling limit was based on Plaintiff's "cervical radiculopathy and limitations imposed by her recent left-sided humerus fracture." R. 23.

The Court finds reversible error in the ALJ's physical RFC because the ALJ selectively discussed probative records regarding Plaintiff's ability to use her arms. Neither the ALJ's summarization of Plaintiff's medical history, nor her explicit analysis of the physical RFC, addressed objective record evidence indicating that Plaintiff had ongoing functional limitations with her arms and left shoulder after her multiple surgeries. For instance, at a January 4, 2024, follow-up appointment Plaintiff could not lift her left arm and lacked full range of motion in her right arm. R. 920-21. The doctor told Plaintiff to begin physical therapy and placed a five-pound lifting limit on her right elbow. R. 921. At a January 12, 2024, physical therapy appointment, Plaintiff complained of "excruciating pain in [her] left arm with movement." R. 928. At an appointment on February 8, 2024, Plaintiff again complained of "having a difficult time lifting her left arm," and the doctor noted that Plaintiff was "unable to abduct her arm past about [forty]

degrees on the left side." R. 932-33. At a February 23, 2024, appointment Plaintiff reported 10/10 aching and sharp pain in her left arm with movement and the doctor noted the presence of swelling. R. 1131. Additionally, Plaintiff's left shoulder range of motion was "grossly limited." *Id.* Her forward flexion was limited to seventy degrees, abduction was limited to sixty degrees, external rotation was limited to zero, and she experienced tenderness to palpation at the bicipital groove. *Id.* The doctor ordered physical therapy for at least the following six weeks, referred Plaintiff to pain management, and restricted her left arm use to weight-bearing as tolerated. R. 1132. At the hearing on April 23, 2024, Plaintiff stated that she could tolerate lifting and carrying 14 pounds with both hands. R. 47.

The ALJ's decision did not discuss any of the above-listed evidence, either as to why the ALJ failed to rely on it or why the ALJ rejected it. The ALJ discussed Plaintiff's lumbar and cervical radiculopathy and her left sided humerus fracture but ignored Plaintiff's complaints of continuous pain and functional range of motion limitations supported by objective medical findings. As a result, Plaintiff's RFC is not supported by substantial evidence. *See Grogan*, 399 F.3d at 1262 ("In addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") (citation modified); *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). This error is harmful because a reduction in Plaintiff's lifting, carrying, reaching, or handling capacity would eliminate the step-five jobs the VE identified.

In his response brief, the Commissioner argues that "the record supports the ALJ's findings that Plaintiff did not have evidence of persistence of significant upper extremity limitations." ECF

8

No. 15 at 9.  In support, the Commissioner points to the favorable evidence regarding Plaintiff's upper extremity functionality following her bilateral humerus fracture injuries, repairs, and postoperative periods.  *Id.* at 8-9.  The Commissioner points out that, in November 2023, immediately after the car accident that caused Plaintiff's bilateral humerus fractures, Plaintiff wore a sling on her right arm but not her left.  *Id.* at 9 (citing R. 912, 1071).  As a result of her injuries, Plaintiff underwent a right elbow fixation.  *Id.* (citing R. 915).  Two days after the procedure, she had "intact motor sensation with no deficits, she was able to make the 'OK' sign, and [she could] wiggle and spread her fingers."  *Id.* (citing R. 1061-62, 1064, 1067).  At two December 2023 follow-up appointments, "Plaintiff had normal range of motion with pain similar to how it was at discharge," "normal strength," the dressing was removed from her left arm but remained above the elbow on her right arm, "distal pulses were intact, her arm was warm to touch, there were no significant erythema or signs of infection, and there were no focal neurological deficits."  *Id.* (citing R. 1115, 1120-21).  At one of the December 2023 appointments, the doctor noted that Plaintiff's right arm incision healed well, her right elbow was stable and could be moved, and the distal neurovascular status was intact.  *Id.* (citing R. 919).  At physical therapy sessions and follow-up examinations in February 2024, Plaintiff's left shoulder had 5- strength in forward flexion, abduction, and internal rotation, and 4+ strength in external rotation.  *Id.* (citing R. 1131).

      The Court rejects the Commissioner's argument.  While the evidence the Commissioner cites may support the ALJ's RFC, the Commissioner does not address the ALJ's failure to discuss other objective medical evidence showing more restricted functionality in the upper extremities.  As demonstrated above, there were medical records contradicting the RFC that the ALJ failed to address or reconcile.  The Court cannot justify the ALJ's decision *post-hoc* with evidence that the ALJ did not discuss.  *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may

9

not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

Because the ALJ did not discuss why the probative evidence in Plaintiff's medical history did not require stricter limitations on lifting and/or carrying and reaching and handling bilaterally, the ALJ's physical RFC is not supported by substantial evidence.

## V.  Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 20th day of February, 2026.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**